**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION**

| | | |
|---|---|---|
| MALIA "KIM" BENDIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | 15CV720 |
| | ) | |
| The CITY OF NAPERVILLE, Illinois, a | ) | Judge |
| municipal corporation, and Naperville Police | ) | |
| Sergeant NICK LIBERIO (#3714), Detective | ) | Magistrate Judge |
| TAMMY SPENCER-HALE (#7218), | ) | |
| Detective WOJTEK KOWAL (#7920), and | ) | |
| Officer JUAN RIOS (#4002), | ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

Plaintiff, MALIA "KIM" BENDIS, through her attorneys, The Hamilton Law Office, LLC, makes the following complaint against Defendants CITY OF NAPERVILLE ("Defendant CITY") and Naperville Police Sergeant NICK LIBERIO (#3714), Detective TAMMY SPENCER-HALE (#7218), Detective WOJTEK KOWAL (#7920), and Officer JUAN RIOS (#4002) ("Defendant Officers):

## JURISDICTION AND VENUE

1. This is an action brought pursuant to 42 U.S.C. §1983 to address the deprivation, under color of law, of Plaintiff's rights under the United States Constitution and under common law of Illinois.

2. This Court has jurisdiction of this case pursuant to 28 U.S.C. §§1331, 1343 and 1367.

3. Venue is proper under 28 U.S.C. §1391(b). All parties reside in this judicial district and the events pertaining to the claims made in this complaint occurred within this district.

## PARTIES

4. Plaintiff is a forty-two-year old resident of Naperville, Illinois.

5. Defendant Officers, at all relevant times, are or were Naperville police officers, employed by Defendant CITY, acting under color of law, and within the scope of their employment.

6. Defendant CITY is a municipal corporation, duly incorporated under the laws of the State of Illinois, and is the employer and principal of Defendant OFFICERS.

## FACTS

7. Plaintiff is a part-time nurse practitioner who lives with her husband and their three children in Naperville.

8. Plaintiff has been a resident of Naperville for 18 years.

## Defendant CITY's "Smart Meter" Program

9. In April of 2010, the City of Naperville created the Naperville Smart Grid Initiative, which is a $22 million energy project, seeking to install wireless "smart meters" to monitor electricity use in Naperville residences and businesses.

10. A number of Naperville residents opposed this program and the installation of "smart meters" on their homes for various reasons, including financial and health concerns.

11. Plaintiff and other Naperville residents formed a not-for-profit organization known as Naperville Smart Meter Awareness (NSMA) to educate Naperville residents about Defendant CITY's smart meter program and to organize opposition to it.

12. Plaintiff is a founding member and the president of this not-for-profit organization.

13. On December 30, 2011, NSMA filed a four-count complaint in the Northern District of Illinois, Eastern Division, challenging the constitutionality of Naperville's "smart meter" program and seeking injunctive relief to stop the forced installation of smart meters on the Naperville homes and businesses, which did not want them. *See Naperville Smart Meter Awareness v. City of Naperville, Case No. 11 CV 9299.*

14. As of the date of this filing, this case is still pending before the Honorable Judge Lee.

2

15. In the past several years, Plaintiff has been publicly outspoken educating Naperville residents about the "smart meter" initiative and expressing her opposition to it. For example, she has spoken at City Council meetings and posted informative materials on the Internet about smart meters.

16. At some point, Defendant CITY contracted a security company to conduct surveillance of Plaintiff.

17. On March 22, 2012, on information and belief, an agent of this security company was conducting surveillance of Plaintiff and made a false 911 call claiming that she was endangering her child's life.

### Defendant CITY Approves Forced Smart Meter Installations And Authorizes Plaintiff's Arrest

18. On January 15, 2013, Defendant CITY held a council meeting in closed-door session.

19. On information and belief, at this January 15th Council meeting, Defendant CITY decided to forcibly install the smart meters on objectors' homes rather than wait for a ruling from the federal district court judge.

20. On information and belief, Defendant CITY also voted during this January 15th closed-door city council meeting to arrest Plaintiff and any other residents who interfered with their plan to forcibly install the "smart meters."

21. Sometime before January 23, 2013, while Judge Lee was still deciding the legality of the "smart meter" installations on the objectors' homes, Defendant CITY instructed its agents and its police officers to enter onto the objecting residents' properties and install the meters, even if they had to force their way onto the residents' property.

22. During these forced installations, some residents, including Plaintiff, made audio and video recordings of the CITY's agents and police officers forcing their way into backyards and installing the smart meters on residents' homes, over the residents' objections.

23. The recordings made by other Naperville residents were made openly and recorded the conversations of the agents and police. None of these other residents were arrested for recording the police officers and installation agents without their consent.

**Plaintiff Is Arrested For Recording Defendant LIBERIO**
**During The Forced "Smart Meter" Installation At Another Resident's Home**

24. In the afternoon on January 23, 2013, Plaintiff was called by another Naperville resident about the CITY's arrival at her home to install a "smart meter" over that resident's objections.

25. Plaintiff went to this other resident's home and used her digital camera to record the installers entering the resident's property without consent or a warrant to do so.

26. At the same time Plaintiff was recording these events, a television news crew was on the scene recording the same events with their cameras and audio equipment.

27. Defendant Sergeant LIBERIO directed Defendants KOWAL and SPENCER-HALE to arrest Plaintiff.

28. Defendants RIOS, SPENCER-HALE and, KOWAL shoved Plaintiff face first against a tree, and roughly placed her in handcuffs.

29. Defendant OFFICERS placed Plaintiff, handcuffed, in the back of a police vehicle and she was taken to the Naperville police station.

30. Defendant OFFICERS caused Plaintiff to be charged with two misdemeanor offenses: "attempt eavesdropping" under the former Illinois Eavesdropping statute, and resisting a peace officer.

**The Unconstitutionality of The Former Illinois Eavesdropping Statute**

4

31. At all relevant times to this complaint, Illinois had an eavesdropping statute that made it a class 1 felony, punishable by up to 15 years in prison, to record the conversations of a police officer without the officer's consent, regardless of whether there was any reasonable expectation of privacy in that conversation. This version of Illinois' eavesdropping statute is no longer in effect and has now been replaced by a version that protects private conversations only.

32. Prior to Plaintiff's arrest on January 23, 2013, multiple courts had found Illinois' former Eavesdropping statute unconstitutional and the Illinois legislature had even introduced a bill to try and fix it.

    a. On September 15, 2011 in the case of *People v. Allison*, No. 09CF50, Illinois Second Judicial Circuit Court Judge David K. Franklin declared the Illinois Eavesdropping statute unconstitutional.

    b. On December 29, 2011, Illinois State Representative Elaine Nekritz introduced House Bill 3944, which sought to amend the Illinois Eavesdropping Act to decriminalize the recording of a peace officer performing a public duty in a public place and speaking at a volume audible to the unassisted human ear.

    c. On March 2, 2012, in the case of *People v. Drew*, No. 10CR4601, Circuit Court of Cook County Judge Stanley Sacks also declared the Illinois Eavesdropping statute unconstitutional as applied to the audio recording of on-duty police officers.

    d. On May 8, 2012, the Seventh Circuit found the statute "likely unconstitutional" and ordered the District Court judge to enter a preliminary injunction against the Cook County State's Attorney prohibiting the prosecution of individuals for audio recording police officers performing their duties in public. *ACLU v. Alvarez*, 679 F.3d 583, 608 (7th Cir. 2012).

33. On January 23, 2013, when Defendant OFFICERS arrested and charged Plaintiff with "attempt eavesdropping," Defendant OFFICERS knew or reasonably should have known that the former

5

statute was unconstitutional, and thus it could not provide probable cause to arrest Plaintiff for that offense.

**The Criminal Case Against Plaintiff**

34. Felony eavesdropping charges against Plaintiff required the approval of an Assistant State's Attorney, which Defendant OFFICERS could not get.

35. Thus, they charged Plaintiff with "attempt eavesdropping," which is a Class A misdemeanor, and does not require the approval of a prosecutor.

36. Because they knew the attempt eavesdropping charge would not ultimately be upheld in court, and because Defendant CITY wanted Plaintiff prosecuted, Defendant OFFICERS fabricated a second charge, the resisting a peace officer charge, and they created or approved false police reports to support this second offense.

37. Plaintiff had to retain the services of an attorney to defend her against the false charges Defendant OFFICERS had placed against her.

38. During the criminal case, the DuPage County State's Attorney dismissed the misdemeanor "attempt eavesdropping" charge due to the Illinois Eavesdropping statute's unconstitutionality.

39. Plaintiff's criminal case was pending for more than twenty months and she had to appear in court on multiple occasions.

40. On September 29, 30 and October 1, 2014, Plaintiff had to stand trial on the resisting a peace officer charge before a jury.

41. At the criminal trial, Defendants LIBERIO, SPENCER-HALE and KOWAL all provided false testimony about the circumstances of Plaintiff's arrest.

42. Plaintiff also testified in her own defense.

43. The jury acquitted Plaintiff, finding her not guilty of the offense of resisting a peace officer.

44. Plaintiff suffered a great deal of anxiety and embarrassment over these false criminal charges during the year and eight months that they were pending.

## COUNT I
### (42 U.S.C. §1983, False Arrest)

45. Each of the foregoing paragraphs is incorporated as if fully restated here.

46. As more fully described above, Defendant OFFICERS arrested Plaintiff, or caused her to arrested without probable cause or any other legal justification to do so, in violation of Plaintiff's rights under the Fourth Amendment to the United States Constitution.

47. As a direct and proximate result of this illegal seizure, Plaintiff has suffered damages, including emotional damages and a loss of liberty, which will be proven at trial.

WHEREFORE, Plaintiff prays for a judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate him for his damages, plus a substantial sum in punitive damages, as well as court costs, attorney's fees, and such other relief as is just and equitable.

## COUNT II
### (42 U.S.C. § 1983 – Excessive Force)

48. Each of the preceding paragraphs is incorporated as if fully restated here.

49. As described above, the intentional conduct of Defendants SPENCER-HALE, KOWAL and RIOS toward Plaintiff was objectively unreasonable under the circumstances, and constituted excessive force under the Fourth Amendment to the United States Constitution.

50. Defendant OFFICERs were each aware of his or her fellow officers' use of excessive force upon Plaintiff, had a reasonable opportunity to intervene to prevent harm to Plaintiff, but failed to do so.

51. As a direct and proximate result of Defendants SPENCER-HALE, KOWAL and RIOS use of excessive force, and the other Defendant OFFICERS' failure to intervene to prevent their fellow

officers' use of force upon Plaintiff, she suffered damages, including physical and emotional

damages, which will be proven at trial.

WHEREFORE**,** Plaintiff prays for judgment against Defendant OFFICERS in a fair and

just amount sufficient to compensate Plaintiff for the injuries she has suffered, plus a substantial

sum in punitive damages, as well as costs, attorneys' fees, and such other relief as is just and

equitable.

## COUNT III
### (42 U.S.C. § 1983 – Equal Protection Class of One Claim)

52. Each of the preceding paragraphs is incorporated as if fully restated here.

53. As described above, Defendant OFFICERS intentionally discriminated against Plaintiff by

arresting her for recording the police activity during the forced "smart meter" installations, while

not arresting other, similarly situated individuals who had made similar recordings without the

police officers' consent.

54. This disparate treatment was undertaken with an improper personal motive and was not

rationally related to a legitimate governmental purpose, in violation of the Equal Protection

clause of the 14th Amendment to the United States' Constitution.

55. As a direct and proximate result of Defendant OFFICERS misconduct, Plaintiff suffered

damages, including physical and emotional damages, which will be proven at trial.

WHEREFORE**,** Plaintiff prays for judgment against Defendant OFFICERS in a fair and

just amount sufficient to compensate Plaintiff for the injuries she has suffered, plus a substantial

sum in punitive damages, as well as costs, attorneys' fees, and such other relief as is just and

equitable.

## COUNT IV
### (42 U.S.C. § 1983 – First Amendment Retaliation Claim)

56. Each of the preceding paragraphs is incorporated as if fully restated here.

8

57. As described above, Plaintiff engaged in activity protected by the First Amendment.

58. Defendant OFFICERS' false arrest of Plaintiff deterred her and others from exercising their First Amendment rights in opposition to Defendant CITY's "smart meter" program.

59. Plaintiff's First Amendment activity concerning the "smart meter" program was a motivating factor in Defendant OFFICERS' decisions to arrest and charge Plaintiff.

60. As a direct and proximate result of Defendant OFFICERS misconduct, Plaintiff suffered damages, including physical and emotional damages, which will be proven at trial.

WHEREFORE, Plaintiff prays for judgment against Defendant OFFICERS in a fair and just amount sufficient to compensate Plaintiff for the injuries she has suffered, plus a substantial sum in punitive damages, as well as costs, attorneys' fees, and such other relief as is just and equitable.

## COUNT V
(Illinois Malicious Prosecution Claim)

61. Each of the preceding paragraphs is incorporated as if fully restated here.

62. As more fully described above, Defendant OFFICERS caused criminal proceedings to be initiated against Plaintiff and/or caused those proceedings to continue against her, without probable cause to do so.

63. With malice, willfulness, and/or reckless indifference to Plaintiff's rights, Defendant OFFICERS created false or inaccurate police reports and complaints, and/or made false statements to a prosecutor.

64. The criminal proceedings against Plaintiff were terminated in her favor, in a manner indicative of innocence.

65. As a direct and proximate result of Defendant OFFICERS' malicious prosecution, Plaintiff suffered financial and emotional damages as described in the preceding paragraphs, which will be proven at trial.

66. At all relevant times, Defendant OFFICERS were acting as agents of Defendant CITY, and were acting within the scope of their employment as Naperville police officers. Defendant CITY, therefore, is liable as principal for all torts committed by Defendant OFFICERS against Plaintiff.

WHEREFORE, Plaintiff prays for judgment against Defendant OFFICERS and CITY in a fair and just amount sufficient to compensate Plaintiff for the injuries she has suffered, as well as such other relief as is just and equitable.

**PLAINTIFF DEMANDS TRIAL BY JURY.**

MALIA "KIM" BENDIS, Plaintiff

Respectfully Submitted,

By: /s Torreya L. Hamilton
    Attorney for Plaintiff

HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, Illinois 60604
312.726.3173
312.726.3157 (fax)
tlh@thehamiltonlawoffice.com
Atty No. 6229397