IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| MALIA "KIM" BENDIS, | ) | |
| | ) | |
| Plaintiff, | ) | 15 CV 720 |
| | ) | |
| vs. | ) | Judge FEINERMAN |
| | ) | |
| The CITY OF NAPERVILLE, et al., | ) | Magistrate Judge SOAT BROWN |
| | ) | |
| Defendants. | ) | |

## PLAINTIFF'S MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Plaintiff Malia "Kim" Bendis ("Bendis") submits this memorandum of law in opposition to Defendants' motion to dismiss. Bendis is a mother and part-time nurse practitioner. *Plaintiff's Complaint* ("*Pl. Cmplt.*") at ¶7. Bendis, her husband and their three children have lived in their Naperville home for more than 18 years. *Pl. Cmplt.* at ¶¶7-8. In April of 2010, Defendant City of Naperville began work on its Smart Grid Initiative, a $22 million energy project which included the installation of wireless "smart meters" to monitor electricity use of Naperville residents and businesses. *Pl. Cmplt.* at ¶9. Bendis and other concerned Naperville residents founded Naperville Smart Meter Awareness ("NSMA"), a not-for-profit organization dedicated to educating residents and organizing opposition to the "smart meter" program. *Pl. Cmplt.* at ¶¶11-12. As president of NSMA, Bendis has been a vocal opponent of the program, speaking at public City Council meetings and publishing informative materials on the Internet. *Pl. Cmplt.* at ¶¶12, 15. NSMA even filed a federal lawsuit to challenge the constitutionality of the "smart meter" program and to seek injunctive relief to stop the installation of the wireless meters. *Pl. Cmplt.* at ¶¶13-14; *Naperville Smart Meter Awareness v. City of Naperville*, No. 11 CV 9299 (pending before Judge Lee). Despite the fact that Judge Lee had not yet ruled upon their request for injunctive relief, the City forcibly installed "smart meters" on NSMA objectors' homes. *Pl. Cmplt.* at ¶¶13-14, 19, 21. Some of these residents,

including Bendis, made audio and/or video recordings of these forced smart meter installations. *Pl. Cmplt.* at ¶22.

On the afternoon of January 23, 2013, Bendis used her digital camera to film the forced installation of a "smart meter," on a NSMA resident's home. *Pl. Cmplt.* at ¶¶24-25. At the same time Bendis was recording, a news crew was present and recording the same scene. *Pl. Cmplt.* at ¶26. Defendant Sergeant Liberio ("Liberio") ordered that Bendis be arrested for recording him. *Pl. Cmplt.* at ¶27. During her arrest, the other Defendant Officers shoved the unthreatening Bendis face first into a tree and roughly handcuffed her. *Pl. Cmplt.* at ¶28. After the State's Attorney denied felony eavesdropping charges against Bendis, Defendants charged her instead with "attempt eavesdropping" and resisting arrest – two misdemeanor criminal offenses under Illinois law. *Pl. Cmplt.* at ¶¶30, 34-36. The attempt eavesdropping charge was dismissed prior to trial. *Pl. Cmplt.* at ¶28. Bendis was acquitted of the resisting charge after a jury trial. *Pl. Cmplt.* at ¶¶40-43.

**ARGUMENT**

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move for dismissal of a claim where the plaintiff fails to state a claim upon which relief can be granted and where the defect appears on the face of the complaint. FED. R. CIV. P. 12(b)(6). That is, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) tests the sufficiency of the complaint, not the merits. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir. 1990). When reviewing a motion to dismiss, a court accepts as true all the factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7,* 570 F.3d 811, 820 (7th Cir. 2009). Bendis has adequately plead her claims and this motion should be denied.

**I. Bendis has alleged a viable false arrest claim.**

Essentially, Defendants argue that Bendis has plead herself out of court on her Fourth Amendment false arrest claim by alleging facts which establish probable cause to arrest her for

2

eavesdropping. Defendants ask this Court to find, on the basis of Bendis's complaint alone, that probable cause existed to arrest her, and thus, that her false arrest claim should be dismissed.

The probable cause determination is not always appropriate for judicial resolution: the determination "must be made by a jury if there is room for a difference of opinion concerning the facts or the reasonable inferences drawn from them." *Wheeler v. Lawson*, 539 F.3d 629, 634 (7th Cir. 2008) (internal quotation marks and citations omitted). Only if the facts upon which the probable cause determination was made are undisputed, may the Court decide the issue. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 434 (7th Cir. 1993). In this case, the facts surrounding the issue of probable cause will be disputed – not whether Bendis recorded the officers – but whether an objectively reasonable officer would have believed there was probable cause to arrest her for eavesdropping under the circumstances that were present here.

### A. An objectively reasonable officer would have known that arresting Bendis for eavesdropping was unconstitutional given the circumstances present in this case.

At the time of Bendis's arrest, both the Seventh Circuit and various criminal courts in the state of Illinois had already found the Illinois Eavesdropping statute unconstitutional. In *ACLU v. Alvarez*, a decision handed down on May 8, 2012, eight months prior to Bendis's arrest, the Seventh Circuit specifically found that the Illinois Eavesdropping Act was "likely unconstitutional" and ordered the District Court to enter a preliminary injunction against the Cook County State's Attorney prohibiting the prosecution of individuals for audio recording police officers performing their duties in public. *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). There had also been findings of unconstitutionality in criminal courts in the state of Illinois, including *People v. Allison*, No. 09-CF-50 (2nd Judicial Circuit Ct.) (Sept. 15, 2011) and *People v. Drew*, No. 10-CR-4601 (Cook County Cir. Ct.) (Mar. 2, 2012). These decisions were also prominently reported in the news.

Even without knowing that the statute had been found unconstitutional by judges in both state and federal court, a reasonable officer would have realized that arresting Bendis for

3

eavesdropping was unconstitutional. Bendis was recording the forced smart meter installations in peaceful public protest of them and as a Naperville taxpayer and community member. *Pl. Cmplt.* at ¶¶8, 11-12, 15, 22. Bendis's act of openly recording an on-duty police officer in plain view while he was performing his public duties and speaking a volume that others could overhear does not fit anyone's common understanding of the word "eavesdropping." Even without any knowledge of the judicial findings of unconstitutionality, a reasonable police officer would have recognized that Bendis's behavior was not the sort of surreptitious recording that eavesdropping laws were meant to prohibit. This is doubly true where the news crew was recording the same officers at the same time without any threat of them being arrested.

While police officers are not "required to anticipate that a court [will] later hold [an] ordinance unconstitutional," in those cases where the enforcement of that law would be "so grossly and flagrantly unconstitutional that any person of reasonable prudence would be bound to see its flaws," probable cause to arrest for a violation of that statute may not exist. *Michigan v. DeFillippo*, 443 U.S. 31, 38 (1979). Most people of reasonable prudence would not only doubt the existence of probable cause to arrest someone for "eavesdropping" under the circumstances which existed here, but would find any law that allowed such an arrest to be manifestly unfair and irrational. Any reasonable Illinois citizen, upon being informed that she can be arrested, prosecuted, and jailed for up to 15 years for recording a police officer harassing her while engaging in a constitutionally protected activity, would exclaim, "Outrageous!" *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *Restatement (Second) of Torts* §46 cmt. d at 73 (1965)); *Schultz v. Advocate Health & Hosps. Corp.*, 2002 WL 1067256, at *1 (N.D. Ill. 2002). The existence of a clearly established right to video record police officers, compounded by the absurdity of Bendis's arrest in this case, creates just such a rare instance where the existence of a statute fails to provide probable cause. This Court should not allow Defendants to hide behind an inherently unconstitutional statute as applied to this

4

situation, and render this infrequently used but well-established probable cause exception a mere jurisprudential mirage.

**B. Bendis has also adequately alleged that Liberio impliedly consented to the recording and thus, there was no probable cause to arrest Bendis for eavesdropping.**

Under the facts of this case, a reasonable jury could conclude that Liberio lacked probable cause to arrest Bendis for eavesdropping because he impliedly consented to her recording him. The Illinois Eavesdropping Act in effect at the time of Bendis's arrest made it a criminal offense to record conversations without the consent of the other party. Under Illinois law, "consent" exists where a person's behavior manifests acquiescence or a comparable voluntary diminution of his or her otherwise protected rights. *Poris v. Lake Holiday Prop. Owners Ass'n*, 2012 IL App (3d) 110131, ¶40 (citing *People v. Ceja*, 204 Ill. 2d 332, 349 (2003)). The requisite "consent" under the eavesdropping statute may be either express or implied. *Ceja*, 204 Ill. 2d at 349; *Poris*, 2012 IL App (3d) 110131, ¶40; *Hurst v. Board of Fire & Police Comm'n*, 2011 IL App (4th) 100964, ¶19; *People v. Fredrics*, 76 Ill. App. 3d 1043, 1049 (1979) ("The consent requirements in consensual eavesdropping cases may be satisfied without a showing of the type of informed consent necessary for a defendant to waive a Fourth Amendment right . . . mere acquiescence is sufficient consent for having a conversation recorded"). Under Illinois law, implied consent may be deduced from the circumstances in a given situation. *Poris*, 2012 Ill App (3d) 110131, ¶41 (citing *Ceja*, 204 Ill. 2d at 350). The circumstances relevant to an implication of consent "will ordinarily include language or acts that tend to prove that a party knows of, or assents to, encroachments on the routine expectation that conversations are private." *Id.; see also People v. Ardella*, 49 Ill. 2d 517, 522 (1971); *Glik v. Cunniffe*, 655 F.3d 78, 87 (1st Cir. 2011) (explaining that "the use of a recording device in 'plain sight' . . . constitutes adequate objective evidence of actual knowledge of the recording").

A jury could conclude that Liberio had impliedly consented to Bendis recording him. Bendis had alleged that she openly and obviously recorded police officers during forced installations of

5

"smart meters," including Liberio just before her arrest. *Pl. Cmplt.* at ¶¶22, 25. Bendis has also alleged that prior to her arrest, other Naperville residents had also openly recorded police officers installing "smart meters" on their homes and they were not arrested. *Pl. Cmplt.* at ¶¶22-23. Moreover, prior to and at the same time that Bendis was recording Liberio, a news crew was present and also recording him, and Liberio did not object to their recording him or order that they be arrested. *Pl. Cmplt.* at ¶26. Bendis's complaint, then, adequately alleges a set of circumstances under which a reasonable jury could find that Liberio impliedly consented to Bendis's recording and thus, there was no probable cause to arrest her for eavesdropping.

**II. Probable cause is not an absolute bar to Bendis's First Amendment Retaliation claim.**

Even if there was probable cause to arrest Bendis for eavesdropping, her retaliation claim survives. "The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions…for speaking out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006). To make out prima facie case of a First Amendment retaliation claim, a plaintiff must show: "(1) [the plaintiff] engaged in activity protected by the First Amendment; (2) [the plaintiff] suffered a deprivation that would likely deter First Amendment activity; and (3) the First Amendment activity was at least a motivating factor in the police officer's decision." *Thayer v. Chiczewski*, 705 F.3d 237, 251 (7th Cir. 2012) (citing *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012) and *Greene v. Doruff*, 660 F.3d 975, 977-78 (7th Cir. 2011)). Once the plaintiff makes a prima facie showing, the burden shifts to the defendants to produce evidence that the government would have taken the same action in the absence of protected speech. *Thayer*, 705 F.3d at 252. The burden then shifts back to the plaintiff to show that the proffered reason is merely pretextual and the real reason for the action taken is retaliatory animus. *Id.*

Defendants do not argue that Bendis did not engage in protected activity, nor that she did not suffer a deprivation that would likely deter other First Amendment activity. Rather, Defendants'

6

argument focuses on the third factor. They argue that Bendis has failed to state a First Amendment retaliation claim because there was probable cause to arrest her. *See Defendants' Motion to Dismiss* ("*Def. Mot.*") at 9-11. Bendis disputes that there was probable cause to arrest her for eavesdropping under the circumstances which were present here. But even if this Court were to find that probable cause existed, this finding does not conclusively bar her First Amendment retaliation claim.

Defendants acknowledge that neither the Supreme Court nor the Seventh Circuit has held that probable cause is an absolute bar to a First Amendment retaliatory arrest claim. *Def. Mot.* at 9-11 (citing *Thayer v. Chiczewski*, 705 F.3d 237, 253 (7th Cir. 2012) and *Reichle v. Howards*, __ U.S. __, 132 S.Ct. 2088, 2095-97, 182 L.Ed. 985 (2012)). In fact, the *Thayer* court specifically held that probable cause did not act as a bar Thayer's First Amendment retaliatory arrest, but instead was "strong evidence that [Thayer] would have been arrested regardless of any illegitimate animus." *Thayer,* 705 F.3d at 252 (citing *Reichle v. Howards*, __ U.S. __, 132 S.Ct. 2088, 2095-97, 182 L.Ed. 985 (2012) and *Hernandez v. Cook Cnty. Sherriff's Office*, 634 F.3d 906, 915 (7th Cir. 2011) (internal quotations omitted)).

Here, Defendants urge this Court to dismiss Bendis's claim at the pleading stage before she has had the opportunity to do any discovery into whether she "would have been arrested regardless of any illegitimate animus." *Thayer,* 705 F.3d at 252 (internal citations omitted). Unlike a federal false arrest claim, Defendants' subjective intent is relevant to prove retaliatory animus and Bendis should be allowed to do discovery on it. For example, discovery may reveal that officials in Naperville and the Naperville police department (including Liberio) were fed up with Bendis's civic activism. They may have pre-determined to arrest her in retaliation for the trouble she was causing them by publicly protesting their smart meter program and filing a lawsuit to try and stop it. Given the fact that others were not arrested for the same First Amendment activity, a jury may believe that Bendis's arrest was motivated, at least in part, by retaliatory animus. The existence of probable cause is not

determinative of Bendis's retaliation claim if the subjective intent of Defendants was to arrest Bendis in order to punish her for being a thorn in the City's side. This Court should deny Defendants' motion to dismiss Bendis's First Amendment retaliation claim.

### III. Bendis's equal protection class of one claim is a distinct claim and is adequately plead.

Bendis's equal protection class of one claim is distinct from her retaliation claim and she has pled sufficient facts to survive Defendants' motion to dismiss. In order to establish a class of one claim, the plaintiff must show that "[s]he was intentionally treated differently from other similarly situated individuals and that there was no rational basis for this difference in treatment." *Thayer v. Chiczewski*, 705 F.3d 237, 254 (7th Cir. 2012) (citing *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) and *Woodruff v. Mason*, 542 F.3d 545, 554 (7th Cir. 2008)). The Seventh Circuit is split on whether class of one claims also require a showing of improper motive. *Thayer*, 705 F. 3d at 254 (citing *Reget v. City of La Crosse*, 595 F.3d 691, 695 (7th Cir. 2010) and *Srail v. Vill. of Lisle, Ill.*, 588 F.3d 940, 944 (7th Cir. 2009)). Bendis has alleged she was intentionally treated differently by the government than others who were similarly situated. Bendis has alleged that others openly recorded the police during forced "smart meter" installations, but only Bendis was arrested for eavesdropping. *Pl. Cmplt.* at ¶¶22-23, 25-26. Bendis has further alleged that this disparate treatment was the result of her public opposition to the City's smart-meter program, rather than some other legitimate governmental purpose. *Pl. Cmplt.* at ¶¶22-23, 26-27, 34-44, 54.

Defendants argue that Bendis's class of one claim is simply a restatement of her First Amendment retaliation claim, and thus both should be dismissed. *Def. Mot.* at 12-13. Both claims do involve a showing that the government activity was not rationally related to a legitimate governmental purpose. (The City argues their legitimate governmental purpose was to enforce the eavesdropping statute and Bendis maintains this is pretextual). But Bendis's retaliation and equal protection claims also have different elements. The retaliation claim requires Bendis to prove

retaliatory animus, but she need not prove disparate treatment. Disparate treatment is an element of Bendis's class of one claim.

The cases cited by Defendants in support of their motion to dismiss Bendis's class of one claim are distinguishable. *Def. Mot.* at 12-13. For example, *Vukadinovich* involved an uncertified teacher who spoke to the local newspaper about his dismissal from his position as a basketball coach and was later terminated from his teaching position. *Vukadinovich v. Bartels*, 853 F.2d 1387, 1387-89 (7th Cir. 1988). There, the court found that the plaintiff's speech was not constitutionally protected activity because the content was a matter of personal rather than public concern. *Id.* at 1389-90. Having found that the plaintiff's speech was not constitutionally protected, the *Vukadinovich* court determined that the plaintiff's equal protection claim must also fail. *Id.* at 1391-92.

The plaintiffs in *Andrekus* were teachers who complained to the Illinois State Board of Education about the state of the special education program at a public high school. *Andrekus v. Bd. of Educ. of Dist. U-46*, 2004 WL 2535274, at *12 (N.D. Ill. Sept. 28, 2004). The *Andrekus* court dismissed the plaintiffs' equal protection claim on summary judgment because they had failed to produce evidence during discovery that they were treated differently because of their speech. *Id.* at *12-13.

Unlike the plaintiff in *Vukadinovich*, Bendis has alleged, and Defendants do not challenge, that Bendis engaged in constitutional protected First Amendment activity in objecting to the "smart meter" program, filing a lawsuit about the legality of the program, speaking out at City Council meetings and posting materials on the Internet. *Pl. Cmplt.* at ¶¶10-15, 22. Moreover, unlike the plaintiffs in *Andrekus*, Bendis has alleged that she was singled out for her First Amendment activity when other residents who recorded the police were not. *Pl. Cmplt.* at ¶¶22-23, 25-26.

Finally, Defendants argue that Bendis has failed to assert that Defendant Officers possessed an improper motive to treat Bendis differently. *Def. Mot.* at 13-14. It is unclear under the law

9

whether this is even required for an equal protection class of one claim, but Bendis's complaint clearly alleges that the City and its agents, including Defendant Officers, were aware of her opposition to the "smart meter" program, and that they treated Bendis differently than other individuals who took similar actions. *Pl. Cmplt.* at ¶¶10-15, 22-23, 25-27, 53. Defendants' request to dismiss Bendis's equal protection claim should be denied.

## IV. Defendants are not entitled to qualified immunity at this stage of the proceedings and the facts do not warrant it.

### A. Qualified immunity should not be granted on a motion to dismiss.

The resolution of a qualified immunity defense in this case requires development of facts outside the four corners of the complaint. Therefore, it cannot be resolved with a Rule 12(b)(6) motion. The pleading rules do not change because an affirmative defense may be asserted. Indeed, the Seventh Circuit has repeatedly warned that "[b]ecause an immunity defense usually depends on the facts of the case, dismissal at the pleading stage is inappropriate: The plaintiff is not required initially to plead factual allegations that anticipate and overcome a defense of qualified immunity." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1090 (7th Cir. 2008) (quoting *Alvarado v. Litscher*, 267 F.3d 648, 651-52 (7th Cir. 2001)); *see also Jacobs v. City of Chicago*, 215 F.3d 758, 775 (7th Cir. 2000) (Easterbrook, J., concurring) ("Rule 12(b)(6) is a mismatch for immunity and almost always a bad ground for dismissal...and when defendants do assert immunity it is essential to consider facts in addition to those in the complaint"). Thus, because a factual record has not yet been developed, this Court should deny Defendants' motion to dismiss on qualified immunity grounds.

### B. Defendants are not entitled to qualified immunity on Bendis's claims.

Defendant Officers are not entitled to qualified immunity in this case because the Illinois Eavesdropping Act as applied here infringed upon Bendis's clearly established constitutional right to record a public official engaged in his public duties, and she was entitled to be free from arrest for exercising that right. In deciding qualified immunity, this Court conducts a two-part test: (1) whether

the facts alleged amount to a constitutional violation, and (2) whether the violation was clearly established at the time of the defendant's conduct. *Pearson v. Callahan,* 555 U.S. 223, 232, 236 (2009).

Defendants' arguments focus on the second prong of this test. Defendants contend that they are entitled to qualified immunity because Defendant Officers arrested Bendis in reliance on a statute that may very well have been unconstitutional at the time. This is not what this Court must decide. The question for this Court to determine here is whether a reasonable person would have believed Bendis had a clearly established right to audio record Liberio as he engaged in his official duties and whether Bendis had a clearly established right to be free from arrest for exercising this right. Bendis submits that regardless of the status of Illinois' Eavesdropping law at the time of her arrest, her First Amendment right to record public officials engaged in their public duties was clearly established at the time of her arrest and thus, Defendant Officers are not entitled to qualified immunity.

### 1. *Defendants are not entitled to qualified immunity on Bendis's false arrest claim because she had a well-established right to record a police officer performing his duties in public.*

In determining whether a constitutional right is clearly established, it is not necessary for the particular violation in question to have been previously held unlawful. *Nanda v. Moss*, 412 F.3d 836, 844 (7th Cir. 2005) (citing *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)); *Newman v. Massachusetts*, 884 F.2d 19, 25 (1st Cir. 1989) (finding constitutional right clearly established in the First Circuit despite "recogni[tion] that the courts are not yet unanimous on whether this . . . right exists"). Instead, "a clearly established constitutional right exists in the absence of precedent, where 'the contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right.'" *Nanda*, 412 F.3d at 844.

The right to record public officials carrying out their duties in public is a well-established and integral part of that "undoubted right" to gather news. *Houchins v. KQED, Inc.*, 438 U.S. 1, 11 (1978)

(quoting *Branzburg v. Hayes*, 408 U.S. 665, 681-82 (1972)). At the time of Bendis's arrest, Liberio and the other Defendant Officers knew (or reasonably should have known) that citizens have a right to photograph, videotape and audio record police officers who are engaged in their official duties in public. The contours of Bendis's right to record her conversation with Liberio "were sufficiently clear that a reasonable official would [have] underst[ood] that what he [was] doing violate[d] that right.'" *Nanda*, 412 F.3d at 844 (citing *Anderson*, 483 U.S. at 640); *see also ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of speech and press rights as a corollary of the right to disseminate the resulting recording"); *Glik v. Cunniffe*, 655 F.3d 78, 85-88 (1st Cir. 2011) (rejecting officer's qualified immunity defense because at the time the plaintiff was arrested in 2007 a "citizen's right to film government officials, including law enforcement officers, in the discharge of their duties in a public space [was] a basic, vital, and well-established liberty safeguarded by the First Amendment"). Furthermore, "using technology to 'record and disseminate police conduct is functionally identical to the traditional democratic right to observe and report police conduct . . . [t]he only difference is that a camera is used instead of eyewitness testimony and hearsay – a change that actually benefits the accuracy of reporting misconduct.'" Michael Potere, *Who Will Watch the Watchmen?: Citizens Recording Police Conduct*, 106 NW. U. L. REV. 273, 301 (2012). In similar situations, other federal courts have had "no trouble concluding that 'the state of the law at the time of the alleged violation gave the defendant[s] fair warning that [their] particular conduct was unconstitutional.'" *Glik*, 655 F.3d at 85 (internal citations omitted).

Moreover, in *ACLU v. Alvarez*, a decision handed down on May 8, 2012, a full eight months prior to Bendis's arrest, the Seventh Circuit specifically stated that the Illinois Eavesdropping Act was "likely unconstitutional" and ordered the District Court to enter a preliminary injunction against the Cook County State's Attorney prohibiting prosecutions for audio recording police officers

performing their duties in public. *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012). There had also been findings of unconstitutionality in the state of Illinois, including *People v. Allison*, No. 09-CF-50 (2nd Judicial Circuit Ct.) (Sept. 15, 2011) and *People v. Drew*, No. 10-CR-4601 (Cook County Cir. Ct.) (Mar. 2, 2012).

Defendant Officers should have recognized the unconstitutionality of arresting Bendis under the circumstances of this case. The second prong of the qualified immunity test is obviously a point of great debate in this case. At this stage of the proceedings, however, Bendis has sufficiently alleged her claims, including the lack of probable cause to arrest her, such that her claims should all survive a motion to dismiss.

### 2. *Defendants are not entitled to qualified immunity on Bendis's Retaliation claim because the "but for" cause of her arrest was her speech.*

Defendants rely on the Seventh Circuit's decision in *Thayer* in asserting that the officers are entitled to qualified immunity on Bendis's retaliation claim. *Thayer v. Chiczewski*, 705 F.3d 237 (7th Cir. 2012). First, in *Thayer,* the plaintiff's retaliation claim was dismissed at the summary judgment stage, not the pleading stage. Second, the facts in *Thayer* are distinguishable.

Plaintiff Andy Thayer, a vocal anti-war activist in the City of Chicago, was arrested for failing to follow a police order to disperse from a location that had not been approved for the purpose of holding a parade and rally. *Thayer*, 705 F.3d at 242, 245. The Seventh Circuit ruled that the officers were entitled to qualified immunity because "[t]he record shows Thayer's refusal to disperse, not his speech was the 'but for' cause of his arrest." *Id.* at 252.

In the instant case, Bendis has alleged that she was arrested in retaliation for her *prior* First Amendment activity. *Pl. Cmplt.* at ¶¶10-13, 15, 20, 22, 24-25, 27, 57-59. In addition, the act which Defendants say gave them probable cause to arrest Bendis was "speech" as defined by First Amendment jurisprudence. *ACLU v. Alvarez*, 679 F.3d 583, 595 (7th Cir. 2012) ("[t]he act of making an audio or audiovisual recording is necessarily included within the First Amendment's guarantee of

13

speech and press rights as a corollary of the right to disseminate the resulting recording"). Bendis has alleged that her First Amendment speech was the "but for" cause of her arrest. Given these important distinctions, this Court should decline to apply *Thayer*.

**V. Bendis has adequately alleged her excessive force claim.**

Bendis has alleged specific facts to state claim for excessive force. Though Defendants acknowledge the general principle that excessive force claims are hardly ever dismissed at the pleadings stage, they nevertheless argue that Count II of Bendis's complaint fails to meet the plausibility standards set forth in *Twombly* and *Iqbal*. *Def. Mot.* at 14; *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Defendants' arguments to dismiss this claim border on frivolous.

The degree of injury does not dictate whether or not the use of force was excessive. As the Seventh Circuit has explained, "[t]hat [a plaintiff's] injuries may have been minor does not militate against a finding of excessive force." *Chelios v. Heavener*, 520 F.3d 678, 690 (7th Cir. 2008) (quoting *Holmes v. Village of Hoffman Estates*, 511 F.3d 673, 687 (7th Cir. 2007)). Here, Bendis has alleged facts that rise above the mere possibility that Defendants used excessive force upon her. Bendis's complaint states Defendants shoved her face first into a tree and roughly placed her in handcuffs. *Pl. Cmplt.* at ¶28. Bendis further alleges in her complaint that she suffered damages, including physical and emotional damages, as a result of Defendant Officers' use of excessive force, and these allegations are sufficient to survive a Rule 12(b)(6) motion. *Pl. Cmplt.* at ¶51. These facts clearly state a claim for excessive force under the law, and Defendants Rule 12(b)(6) motion is without merit.

Defendants cite *Coleman v. City of Chicago*, No. 09 C 6700, 2011 WL 1542129, at *5 (N.D. Ill. Apr. 22, 2011) in support of their request that this Court dismiss Bendis's excessive force claim. *Def. Mot.* at 15. First, *Coleman* involved a summary judgment, not a 12(b)(6) motion. Second, in *Coleman*, this Court denied the defendants' motion for summary judgment on the plaintiff's excessive force

claim and noted that "an excessive force claim must go to a jury when the plaintiff adduces evidence of significant pain resulting from handcuffing under circumstances where the need for restraint was light and where the officers were aware of medical or physical limitations making it more painful than usual for a detainee to be handcuffed in the ordinary course." *Coleman,* 2011 WL 1542129, at *5 (internal citations omitted). This case seems to support Bendis's arguments instead of Defendants. Bendis has alleged an excessive force claim based not only on being roughly handcuffed, but also on being shoved face first into a tree. *Pl. Cmplt.* at ¶28. These allegations are sufficient to survive Defendants' motion to dismiss.

## CONCLUSION

Bendis has adequately alleged all the claims she has chosen to bring in this matter. WHEREFORE, she respectfully requests that this Court deny Defendants' Motion to Dismiss in its entirety.

Respectfully Submitted,

/s Torreya L. Hamilton
One of Plaintiff's Attorneys

Elizabeth R. Uribe, *of counsel*
Torreya L. Hamilton
HAMILTON LAW OFFICE, LLC
53 West Jackson Boulevard, Suite 452
Chicago, IL 60604
312.726.3173